SALTER, J.,
dissenting from written opinion and from denial of the motions for rehearing and rehearing en banc.
I respectfully dissent from the majority’s written opinion, and from the denial of the appellant’s motion for rehearing and rehearing en banc.
This appeal from the summary denial, of a twelve-year-old immigrant juvenile’s “private petition” for dependency was decided without oral argument. Our per curiam affirmance with citations to two recent decisions of this Court[2] was issued days before the Supreme Court of New Jersey issued what is, in my view, a comprehensive and balanced opinion addressing the important issues in these “special immigrant juvenile” (SIJ) cases. See H.S.P. v. J.K., 223 N.J. 196, 121 A.3d 849 (2015). Other states have also issued thoughtful opinions on the unique issues posed when federal immigration policies intersect with state dependency criteria and procedures in SIJ cases.[3]
*541 While I joined in the citation per curiam affirmance, initially, I am now persuaded that F.J.G.M.’s sworn petition has alleged a prima facie case that should not be summarily denied in the circuit court and then affirmed, as here, on the basis of the two decisions that involved different claimants, claims, and appellate records. In. addition to the helpful decision in H.S.P., recent decisions by other Florida District Courts of Appeal are in conflict on these issues, and this apparently prompted the Supreme Court of Florida to accept review in the SIJ case of O.I.C.L. v. Department of Children & Families, 169 So.3d 1244 (Fla. 4th DCA 2015), review granted, No. SC15-1570, 2015 WL 6854614 (Fla. Oct. 30, 2015) (oral argument heard Feb. 2, 2016).
The recent motions for rehearing and rehearing en banc in this and other SIJ cases have also raised an important, unsettled legal issue that has arisen in such cases: is the abandonment of a child by a parent for-many years subject to the same “remoteness in time” analysis that Florida courts have applied to temporally remote acts of abuse or neglect?. Our decision in In re K.B.L.V., 176 So.3d 297 (Fla. 3d DCA 2015), stated:
In the absence of a continuing threat of harm, however, incidents of alleged abuse found too remote in time will generally not support a dependency adjudication. See, e.g., In re K.V., 939 So.2d 200, 202 (Fla. 2d DCA 2006) (where instances of domestic violence in the presence of the child were too remote in time to support an adjudication of dependency); B.C. v. Dep’t of Children & Families, 846 So.2d 1273, 1274 (Fla. 4th DCA 2003) (stating that “[i]n order to support an adjudication of dependency, the parents’ harmful behavior must be a present threat to the child”).
Id. at 299 (alteration in original).[4]
In the cited cases, however, the acts alleged to warrant an adjudication of dependency were acts of domestic violence alleged to constitute “abuse,” not the act of abandonment. In In re K.V., the father was alleged to have engaged in .domestic violence and abuse against the grandmother. 939 So.2d at 201. In B.C., two instances of domestic violence between the father and his former wife that had occurred two years before "the petition for dependency was filed were found insufficient to constitute “imminent” harm to the child. 846 So.2d at 1276. I can find no Florida case holding that long-term abandonment by a-parent for many years is too remote for consideration as a danger and imminent harm to a child, or that, as a matter of law, long-term abandonment cannot support an adjudication of dependency with respect to the abandoning parent.
Another important change in the treatment of SIJ petitions has occurred as a result of .the Department of Children and Families’ (DCF’s) decision to review the petitions and to take a position in the trial court and on appeal. That policy was not in, place on February 20, 2015, when F.J.G.M.’s amended petition was' considered by the trial court.’ F.J.G;M.’s amendment to his petition, filed before the hearing in the case, alleged that DCF services should be considered “since the minor has previously .threatened' to take his life due to the separation he endured from his mother,”, and .“since the minor has not been with either of his parents since the age of two years, ‘DCF services might be necessary to ease reunification with the *542 mother and help the minor cope with the abandonment from his father.”[5] The amended petition also alleged that Honduras was subject to a United States Department of State warning based on a “critically high” level of crime and violence, that F. J.G.M. was already the respondent in an Immigration Court removal action, and that he had no parent or other caretaker in Honduras to rely upon if deported to that country.
DCF did not investigate or respond to those allegations, and they were not addressed in the trial court’s brief hearing or its short order denying the petition without adjudicative findings. In this appeal, DCF filed a “Notice of the Department’s Position” explaining that it would not participate in the appeal because “The Department did not assert its party status, did not appear as a litigating party in the trial court, and did not take a position in the underlying proceedings on the issue of whether the Appellant proved the statutory requirements for dependency.”
These recent developments, the number of such cases, and the recent shift away from individualized adjudication is detailed in my dissent in another such case, In re B.R.C.M., 182 So.3d 749 (Fla. 3d DCA 2015). For the sake of brevity, I rely upon the analysis in that dissent but do not repeat it here.
F.J.G.M.’s petition seeks an adjudication that would assist him in applying for SIJ status under federal immigration law,[6] but that is not a proper basis for dismissing or denying the petition. As detailed in H.S.P., findings of fact and an adjudication of an immigrant juvenile’s claims as to each parent are appropriate. An evidentiary hearing (rather than a four-minute,[7] non-evidentiary hearing and summary denial), together with specific written findings and conclusions, will also allow meaningful appellate review.
I have not concluded that FJ.G.M.’s amended petition should be granted, because his allegations are still subject to proof at an evidentiary hearing. At this procedural point, however, I would reverse and remand the amended petition to permit DCF to consider and take a position on F.J.G.M.’s allegations. I would direct the trial court to conduct an evidentiary hearing on remand and issue written findings on the allegations of dependency as to each parent.
For these reasons, I respectfully dissent from the written opinion issued by the majority today, and from the denial of F.J.G.M.’s motions for rehearing and rehearing en banc.

. In re B.Y.G.M., 176 So.3d 290 (Fla. 3d DCA 2015);. In re K.B.L.V., 176 So.3d 297 (Fla. 3d DCA 2015).

. See, e.g., In re Estate of Nina L. ex rel. Howerton, 397 Ill.Dec. 279, 41 N.E.3d 930 (Ill.App.Ct.2015); Simbaina v. Bunay, 221 Md.App. 440, 109 A.3d 191 (2015).

. This Court’s decision in In re. B.Y.G.M., decided the same day, also cited the same two cases for the “too remote to serve as a basis for dependency” conclusion. 176 So.3d at 293.

.Although F J.G.M. was released to his mother in Miami by the Office of Refugee Resettlement in August 2013, he had not lived with her from the time he was two years of age until he was ten. His biological father filed a written acknowledgment of paternity and consent to F.J.G.M.'s dependency petition, certifying that he had in fact abandoned F.J.G.M.

. 8 U.S.C. § 1101 (a)(2 7) (J); see also § 39.5075, Fla. Stat. (2015),

. This is the time according to the hearing transcript.